UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CADY LYNNE PLEWA,<br><br>                       Plaintiff,<br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                       Defendant. | Case No. 3:15-cv-00205-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 18, 2016. |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disabled child's insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed and this matter should be dismissed with prejudice.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On August 8, 2012, plaintiff filed an application for child's benefits, alleging disability as of March 13, 1988, due to Attention Deficit Hyperactivity Disorder ("ADHD"), complications from premature birth, learning disability, asthma, lower back pain, feet and leg pain. <u>See</u> Administrative Record ("AR") 79. Her application was denied upon initial administrative

REPORT AND RECOMMENDATION - 1

review and on reconsideration.  See AR 89-91, 93-94.  A hearing was held before an administrative law judge ("ALJ") on September 17, 2013, at which plaintiff, represented by counsel, appeared and testified, as did her mother, Lynne Boeger.  See AR 9, 902-40.  A vocational expert ("VE") also appeared and testified at the hearing.  See AR 940-45.

On October 25, 2013, the ALJ issued a decision in which plaintiff was determined to be not disabled.  See AR 9-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 18, 2014, making the ALJ's decision defendant's final decision.  See AR 1-5; see also 20 C.F.R. § 404.981.  On March 9, 2105, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  See ECF #5.  The administrative record was filed with the Court on July 15, 2015.  See ECF ## 14, 15.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further proceedings, because the ALJ erred by: (1) determining plaintiff did not suffer from a severe impairment; (2) failing to properly consider the co-signed opinion of school psychologist Meggan Jung, speech pathologist Virginia Skordal, and nurse Peggy Hunt contained in their May 2006 neuropsychological evaluation; and (3) finding plaintiff could perform other work in the economy.  For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

The Social Security Administration provides for the payment of disabled child benefits based on the earnings record of an insured person who is entitled to old-age or disability benefits

REPORT AND RECOMMENDATION - 2

or has died. 20 C.F.R. § 404.350(a). The claimant must be dependent on the insured and under age eighteen or eighteen years or older with a disability arising before age 22. 20 C.F.R. §§ 404.350(a)(2), (5). Here, plaintiff claims she is over eighteen with a disability manifested before age 22. To determine eligibility, the ALJ follows the five step disability evaluation process. 20 C.F.R. § 404.1520(a).

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

REPORT AND RECOMMENDATION - 3

sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.     Severe Impairment

When evaluating disability, the ALJ must determine whether the claimant has an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  A non-severe impairment "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). To meet this low threshold, the claimant must provide evidence from "acceptable medical sources" to establish a "medically determinable impairment." 20 C.F.R. § 404.1513(a). "An 'impairment' must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling ("SSR") 96–4p;  see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).  To prove a severe impairment, the record must include results of these "medically acceptable clinical diagnostic techniques." Ukolov, 420 F.3d at 1005. Symptomology, alone, cannot establish a severe impairment.  SSR 96–4p; Ukolov, 420 F.3d at 1005.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

The ALJ determined plaintiff did not have a severe impairment. "While the claimant has physical and mental impairments, the objective medical evidence does not support finding they are severe prior to age 22." AR 20.  Plaintiff contends that her need for special education services due to ADD is strong evidence she suffered from an impairment that interfered with her ability to function in a work-like setting and satisfies the requirements for finding a severe impairment. Dkt. 19 at 6.

Whether or not plaintiff's ADHD amounted to a severe impairment, there is no error requiring reversal because the ALJ included an alternate analysis with ADHD as a severe impairment. AR 20-22.  The ALJ determined, "even if I concluded that the claimant did have a severe impairment of ADHD, she would not be disabled prior to her 22nd birthday." AR 20.  The ALJ then discussed the evidence, formulated a residual functional capacity, and completed the remaining steps of the disability analysis with ADHD as a severe impairment.  AR 20-22.  Thus, despite an initial determination that plaintiff did not suffer from a severe impairment, the ALJ still conducted the analysis necessary after finding a severe impairment at step two.  Therefore, if the ALJ erred in the initial step two conclusion, the error was harmless. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless when nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion).

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

REPORT AND RECOMMENDATION - 5

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

Plaintiff alleges the ALJ failed to give adequate consideration to the medical opinions of several sources contained in a May 2006 neuropsychological evaluation. The evaluation was co-signed by plaintiff's mother, teacher, school psychologist Meggan Jung, speech language pathologist Virginia Skordal, school counselor Karen (last name illegible), and nurse Peggy Hunt. AR 261. Plaintiff contends Ms. Jung is her treating doctor, and Ms. Skordal, Ms. Hunt,

REPORT AND RECOMMENDATION - 6

and the school counselor are treating medical sources. Dkt. 19 at 5, 8. Despite this claim, neither the neuropsychological evaluation nor the record as a whole includes information on Ms. Jung's educational training or treatment relationship with plaintiff. AR 249-78. Therefore, no evidence establishes her as either an acceptable medical source or treating physician. AR 249-78; See 20 C.F.R. § 404.1513 (a); 20 C.F.R. § 404.1527(c).However, for the purpose of this review the Court will assume Ms. Jung is an examining medical professional during consideration of the issues below. Similarly, the speech pathologist, nurse, and school counselor are also examining—not treating—medical professionals.[2] AR 249-78.

      The ALJ discussed the co-signed neuropsychological evaluation which established a diagnosis of ADD and opined that plaintiff had mild attentional weaknesses, and mild auditory and visual spatial memory deficits. AR 251. The evaluation also included a report written by speech pathologist Ms. Skordal and signed off by Ms. Jung. AR 257-61. Ms. Skordal identified difficulties in all areas of "Language Fundamentals," and noted that plaintiff struggled to sustain attention and focus while listening to spoken passages. AR 257. She "processe[d] information slower, and ha[d] difficulty quickly retrieving information and synthesizing it, and experience[d] difficulties with the organization, planning, and execution of complicated tasks." AR 258. She was in need of specially designed instruction and received special education services. AR 258.

      The ALJ acknowledged this information. "It was reported she processes information slower, has difficulty quickly retrieving information and synthesizing it, and experiences difficulties with the organization, planning, and execution of complicated academic tasks." AR 15. However, the ALJ also noted that plaintiff was able to achieve very good grades in school,

---

[2] Of note, the neuropsychological report contains no evidence of independent evaluation by either the school nurse, Peggy Hunt, or the school counselor. From all appearances, the two professionals merely reviewed and signed the evaluation. AR 249-78. Therefore, they proffered no opinions other than those discussed in relation to Ms. Jung and Ms. Skordal.

REPORT AND RECOMMENDATION - 7

and had excellent motivation, work habits, attitude, and support. AR 15. "This evidence shows that the claimant has some mental impairment and needed extra assistance in school, but this evidence does not show that the claimant would have any limitations in performing basic work activities." AR 15. Furthermore, the ALJ concluded the objective testing shows "she processes information slower, has difficulty quickly retrieving information and synthesizing it, and experiences difficulties with the organization, planning, and execution of complicated academic tasks. These limitations are considered in the claimant's residual functional capacity finding." AR 20. In deference to these limitations, the residual functional capacity ("RFC") included work at all exertional levels with routine and repetitive tasks and instructions and moderate pace throughout the workday. AR 20. The ALJ also determined plaintiff was able to complete assigned tasks within customary tolerance, but should not work in an assembly environment where other employee's tasks would be dependent on her pace. AR 20. She should also avoid concentrated exposure to temperature extremes, humidity, odors, dusts, gases, and poor ventilation. AR 20.

Plaintiff claims the ALJ erroneously rejected the opinion from the neuropsychological evaluation. Dkt. 21 at 2. However, the ALJ found that this objective evidence showed slower information processing and issues with organizing and planning which were addressed in the RFC limitation to "routine and repetitive tasks and instructions" at a moderate pace, and excluding an "assembly environment where another employee's tasks would be dependent on her pace." AR 20. Therefore, rather than reject the opinion, the ALJ accepted and included these aspects of the neuropsychological evaluation.

The ALJ summarized the evidence and concluded plaintiff could engage in the basic work activities of the RFC based on her functioning. AR 15-16. As noted, plaintiff was able to

REPORT AND RECOMMENDATION - 8

achieve very good grades in school. AR 20. She graduated from high school and college and worked part-time. AR 20. These successes contradict her allegations of disabling mental impairment. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Finally, the neuropsychological evaluation addressed requirements for plaintiff's educational, rather than employment, needs. While plaintiff has alleged error in the the ALJ's consideration of this evidence, she has not identified any additional employment restrictions required by the neuropsychological evaluation. The Court declines to find that the ALJ failed to account for alleged limitations in some unspecified way. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 n. 2 (9th Cir. 2009).

The ALJ's proper evaluation of the neuropsychological evaluation applies to all co-signers of the single report. Plaintiff has not shown any reason the analysis should differ as to each individual provider. Therefore, the ALJ was not required to repeat the conclusions for all co-signing providers. The Court's reasoning also applies to all involved in the preparation of the report. The ALJ did not err in the assessment of the neuropsychological evaluation and incorporation of limitations into the RFC.

## II.     Other Work

At step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert ("VE") or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  Here, the ALJ found plaintiff could perform work as light janitor/housekeeper, office helper, and parking garage cashier based on VE testimony.

REPORT AND RECOMMENDATION - 9

AR 22.  Because the ALJ properly evaluated the evidence, the RFC was supported by substantial evidence. As a result, the hypothetical posed to the VE and the ALJ's reliance on the vocational expert testimony was not erroneous. See Hill v. Astrue 698 F.3d 1153, 1162 (9th Cir. 2012).

Plaintiff's step five argument claims the ALJ's conclusion that she could work as a parking garage cashier was not supported by the VE's response to the hypothetical posed at the hearing. Dkt. 19 at 7. The ALJ posed a hypothetical including a prohibition on concentrated exposure to fumes, odors, gases and poor ventilation in deference to plaintiff's asthma. AR 940. The VE initially cited parking garage cashier as one of the representative jobs that satisfied the hypothetical. AR 942. However, the VE subsequently expressed concern that the parking garage cashier position had increased exposure to automobile fumes and was, therefore, not applicable to the hypothetical. AR 942-3. Given this information, the plaintiff is correct; the VE's testimony does not support the ALJ's conclusion that she could work as a parking garage cashier.

However, in addition to parking garage cashier, the ALJ identified office helper and light janitor/housekeeper as representative jobs plaintiff could perform in the national economy. AR 22.  This conclusion was properly supported by the vocational expert's testimony.  AR 941-42. Thus, any error in finding plaintiff capable of work as a parking garage cashier position was non-prejudicial to the plaintiff and harmless. Stout, 454 F.3d at 1055.

The ALJ's determination that plaintiff was not disabled is free of legal error and supported by substantial evidence.

## CONCLUSION

REPORT AND RECOMMENDATION - 10

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 18, 2016**, as noted in the caption.

DATED this 3rd day of March, 2016.

*[signature]*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11